IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**DAVID LEON BANKS, JR.,**

    **Movant,**

v.                                            **Case No. 2:04-cv-01102**
                                                 **Case No. 2:03-cr-00059**
                                                 **Case No. 2:03-cr-00131**

**UNITED STATES OF AMERICA,**

    **Respondent.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending is Movant's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (docket sheet document # 30 in Case Nos. 2:04-cv-01102 and 2:03-cr-00059; # 33 in Case No. 2:03-cr-00131), which was filed on October 12, 2004. This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

During the summer of 2002, United States Postal Inspectors were investigating the disappearance of a substantial quantity of food stamps from the United States mails. They determined that over $61,000 in food stamps had been mailed to individuals residing in or near Spencer, West Virginia, but the food stamps were never received by the intended recipients.

Postal Inspectors were separately investigating two armed robberies of postal trucks at the Post Office in Sissonville, West Virginia, which occurred on July 3, 1998, and February 3, 2000, respectively. On February 12, 2003, Postal Inspectors arrested James Stephenson Lynch (hereinafter "Lynch") as a suspect in the robbery investigations. Lynch told the inspectors that Movant, David Leon Banks (hereinafter "Defendant"), had been involved in both of the robberies and in the theft of the food stamps.

Postal Inspectors then set up an undercover operation at the Spencer Post Office, where Defendant was employed, and observed Defendant taking food stamps while he was sorting the mails. Defendant was arrested and questioned. He admitted to stealing food stamps from the mail over a three year period from both the Spencer and Alum Creek Post Offices. Defendant further stated that he had information concerning the two armed robberies of the postal trucks, but refused to divulge any information, absent a grant of immunity or a promise of probation.

Based upon information provided by Lynch and other sources, Postal Inspectors learned that Defendant and Keith Andrew Lilly robbed the driver of a mail truck as he was making a scheduled pick-up at the Sissonville Post Office on July 3, 1998. Lilly pointed a gun, equipped with a silencer, at the driver and ordered him to his knees. Defendant, who was allegedly carrying a loaded .45 caliber handgun, climbed into the truck and stole bags of

registered mail containing cash and checks.  Lilly then instructed the driver to remain in a confined space just inside the rear doors of the Post Office for 15 minutes, and threatened him, stating, "Someone will be watching you from across the way" and "You're wife's name is Cathy and I know where you live" and "We'll come after you."  Lilly and Defendant escaped with approximately $52,000 in cash and checks.

On February 3, 2000, Defendant and Lilly set out to rob the Sissonville Post Office in the same manner.  Lynch was also involved in that robbery.  They held the mail truck driver at gunpoint, ordered him to the ground, and tied him up.  As a result of that robbery, the three men acquired approximately $35,000 in cash and checks.

On February 14, 2003, Defendant was indicted on one count of theft of mail by a postal employee, in violation of 18 U.S.C. § 1709.  (Case No. 2:03-cr-00059, # 9).  Assistant Federal Public Defender Edward H. Weis was appointed to represent Defendant in that matter.  Prior to trial, Defendant agreed to plead guilty to the one-count indictment.  Defendant entered into his guilty plea on May 12, 2003.  (Id., # 16).

On May 15, 2003, Defendant was arrested and charged by a criminal complaint with aiding and abetting the armed robbery of a mail custodian, in violation of 18 U.S.C. §§ 2114(a) and 2.  (Case No. 2:03-cr-00131, # 1).  Mr. Weis was appointed to represent

Defendant in that matter, as well. On June 3, 2003, Defendant pled guilty to those charges, as stated in a two-count information (id., # 11), and pursuant to a written plea agreement (id., # 17). Lilly and Lynch were also prosecuted and both pled guilty to violations of 18 U.S.C. § 2114(a).

A sentencing hearing was conducted in both of Defendant's criminal cases on October 6, 2003. Separate Presentence Investigation Reports ("PSR") were prepared for each case, using the 2003 edition of the United States Sentencing Guidelines. With respect to the theft of mail charge, the probation officer calculated Defendant's total offense level to be a Level 12, pursuant to USSG 2B1.1. With a criminal history category of I, Defendant's Guideline sentencing range for that offense was determined to be 10-16 months. Defendant did not object to that calculation or anything else contained in the final version of that PSR. (Case No. 2:03-cr-00059, # 38 at 2-4; Case No. 2:03-cr-00131, # 30 at 2-4).

With respect to the two armed robbery counts, the probation officer determined, pursuant to USSG 2B3.1, that Defendant's total offense level was 32, which yielded a Guideline sentencing range of 121-151 months. Defendant, by his counsel, Mr. Weis, objected to a six-level enhancement under USSG § 2B3.1(b)(2)(B) for "otherwise using a firearm." Mr. Weis contended that the enhancement should only be five levels for the lesser act of "brandishing" the

4

firearm.  (Case No. 2:03-cr-00059, # 38 at 6-7, 34-35; Case No. 2:03-cr-00131, # 30 at 6-7, 34-35).  Otherwise, Defendant expressly acknowledged that the PSR was in "all respects correct."  (Id. at 7-8).  The United States objected to the failure to include a two-level enhancement for restraint of the victim in the 1998 robbery.

The presiding District Judge, the Honorable John T. Copenhaver, Jr., overruled both objections to the PSR (Case No. 2:03-cr-00059, # 38 at 43-44; Case No. 2:03-cr-00131, # 30 at 43-44).  Judge Copenhaver then sentenced Defendant to 144 months of imprisonment.  (Id. at 54-55).  Judge Copenhaver advised Defendant of his right to file a Notice of Appeal within 10 days.  (Id. at 56).  However, Defendant did not appeal any aspect of his conviction or sentence.

On October 12, 2004, Defendant filed the instant section 2255 motion. (Case Nos. 2:04-cv-01102 and 2:03-cr-00059, # 30; Case No. 2:03-cr-00131, # 33)[1].  As grounds for relief, Defendant claims that Mr. Weis provided ineffective assistance of counsel because he failed to object to enhancements based upon judicially-found facts (Ground One), and because he failed to pursue an appeal of Defendant's "illegal sentence" (Ground Two).  On May 5, 2005, Defendant filed a Memorandum in Support of his section 2255 motion

---

[1] For the sake of simplicity, except when recommending a ruling on the pending motions, (in which case, the undersigned will cite to the document numbers in the civil case, as well as both criminal matters), from this point forward, the undersigned will only refer to the document numbers in the civil action.

5

(# 42), and on June 8, 2005, Defendant filed two affidavits; one from himself and one from his wife. (## 43 and 44).

On July 25, 2005, pursuant to the undersigned's order, the United States filed a Response to Defendant's section 2255 motion. (# 48). The United States contends that Defendant's failure to file an appeal resulted in the waiver of any right to pursue issues concerning the calculation of his sentence in collateral proceedings, unless Defendant can show cause for the default and prejudice ensuing therefrom. The United States further contends that Defendant's claim that Mr. Weis failed to pursue a requested appeal lacks merit and, thus, such a claim cannot serve as cause to excuse Defendant's appellate default.

Defendant has not filed a reply brief. The matter is ripe for determination. The undersigned will first address the failure to file an appeal and will then turn to Defendant's other claim of ineffective assistance of counsel.

## ANALYSIS

**A. Failure to file a direct appeal.**

In Ground Two of his section 2255 motion, Defendant claims that "Counsel failed to appeal Mr. Banks['] illegal sentence. (# 30 at 5, Ground Two). In his Memorandum in Support of his motion, Defendant states:

> After sentencing[,] Mr. Banks ask[ed] his attorney about filing a[n] appeal. See Affidavit of Mr. David L. Banks, Jr. His attorney responded by stating, "that he thought that it would be unlikely that I would be

6

> successful on appeal." Id. His attorney, "Mr. Weis," also told him that he would come and see him. Id. After the conversation, Mr. Weis has never made any contact with Mr. Banks, and all attempts by Mr. Banks to contact Mr. Weis have failed.
>
> Mr. Banks' wife[,] Susan R. Banks, after many attempts[,] finally made contact with Mr. Weis, by telephone. See Affidavit of Susan Banks. She asked him about filing an appeal, to which he responded stating, that he did not see an appeal being successful, but he was going to see David. Id. Based upon Mrs. Banks' conversation with Mr. Weis, she thought David's sentence would be appealed, but there was little change [sic; chance?] of success. Id.

(# 42 at 7-8). Defendant's affidavits make substantially the same assertions. (## 43, 44).

The United States' Response states, in pertinent part, "[Defendant] never claims he actually instructed Mr. Weis to file a notice of appeal and that Mr. Weis failed to follow his instruction. Nor does he claim that in his 'many attempts' to contact Mr. Weis, he ever left word for Mr. Weis to file an appeal." (# 48 at 8). The United States has provided an affidavit from Mr. Weis that expressly contradicts Defendant's assertion that Mr. Weis did not have any contact with him after the October 6, 2003 hearing, and asserts that Defendant did not ask him to file an appeal. (Id., Ex. A).

Mr. Weis' affidavit states that he traveled to the Carter County Detention Center to meet with Defendant on October 13, 2003, and that they discussed the issue of an appeal. (Id., Ex. A, ¶4). Mr. Weis states that, during that meeting, Defendant "agreed not to

appeal." (Id.)  Mr. Weis further states that, on October 15, 2003, he and Defendant met with Assistant United States Attorney Philip Wright to discuss another matter, and that Defendant did not mention any interest in appealing his sentence at that time either. (Id. Ex. A, ¶5).  Mr. Weis further states that, on December 31, 2003, after the time to file an appeal had expired, he spoke with Defendant by telephone and Defendant did not say anything about an appeal in that conversation.  (Id., Ex. A, ¶6).  Mr. Weis has provided his billing records for these meetings and conversations, as well.  (Id., Ex. A, Ex. 1).

As noted by the United States in its Response, the failure to file a requested appeal constitutes per se ineffective assistance of counsel.  United States v. Peak, 992 F.2d 39 (4th Cir. 1993). (Id. at 7-8).  Based upon the evidence of record, it does not appear that Defendant actually requested that Mr. Weis file an appeal.  Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated that he is entitled to relief under Peak.

> **B. Ineffective assistance of counsel for failure to adequately object to sentencing enhancements based upon judicially-found facts.**

In Ground One of his motion, Defendant asserts:

> Mr. Banks objected to the six-level enhancement. id. Specifically, Mr. Weiss' [sic; Weis'] (counsel for Mr. Banks) sole objection was, "[T]he presentence report as to both robberies gives a six-level enhancement.  I contend in my objections that there should be a five-

> level enhancement." see Sent. Tr. ctp. 6. Following an evidentiary hearing (in which Mr. Kenneth Gillispie, who was the mail custodian allegedly robbed in 1998 was the sole witness)(Sent. Tr. st 14-26). Mr. Banks objected citing <u>United States v. Matthews</u>, 20 F.3d 538 (2nd Cir. 1994) to support his contention. The district court rejected Mr. Banks' arguments and enhanced his base offense level by six pursuant to U.S.S.G. §2B3.[1](b)(1)(2)([B]) based upon facts found by the district court, not by a jury or a stipulation of Mr. Banks.

(# 42 at 4). Defendant's Memorandum in Support further states, "[h]ad counsel based his objections on <u>Apprendi</u> and/or <u>Jones</u>[,] there is a reasonable probability that the outcome would have been different at sentencing. The prejudice to Mr. Banks, especially compared to the sentence he would have received if the district court had not enhanced his sentence by six-levels is manifest." (<u>Id.</u> at 7).

The undersigned proposes that the presiding District Judge **FIND** that Defendant has not demonstrated sufficient cause and prejudice to overcome his appellate default. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that Defendant has waived the right to pursue any collateral relief concerning the calculation of his sentence, including the enhancements given. At any rate, it appears that Defendant's sentence was appropriately enhanced under the dictates of the <u>Apprendi</u> decision.

To the extent that Defendant is asserting that his counsel was ineffective for failing to object to Defendant's sentencing

9

enhancements based upon the Supreme Court's recent decision in United States v. Booker, 125 S. Ct. 738 (2005), such a claim also lacks merit.

In Blakely v. Washington, 124 S. Ct. 253 (2004), the Supreme Court held that: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Blakely Court noted that the term "statutory maximum" as used for purposes of Apprendi means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.

The Blakely decision was based upon the Court's interpretation of Washington statutory law. However, because it was believed that the decision could have some impact on the Federal Sentencing Guidelines, the undersigned held Defendant's pending motions in abeyance until the Supreme Court made additional rulings concerning its application.

On January 12, 2005, the Supreme Court decided United States v. Booker, 125 S. Ct. 738 (2005), which reaffirmed the Court's holding in Apprendi, applied the holding in Blakely to the Sentencing Guidelines, and held: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a

10

jury beyond a reasonable doubt." 125 S. Ct. at 756. The Booker holding applies "'to all cases on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break" with the past.'" 125 S. Ct. at 769 (quoting Griffith v. Kentucky, 479 U.S. 314, 328 (1987)). Defendant's case has concluded direct review and is final. Thus Booker does not apply, unless the Supreme Court rules that it is to be applied retroactively to cases on collateral review.

Seven Circuit Courts of Appeals have ruled that Booker does not apply retroactively to cases on collateral review. In McReynolds v. United States, 397 F.3d 479, 480-81 (7th Cir.), cert. denied, 125 S. Ct. 2559 (2005), the Court held:

> Although the Supreme Court did not address the retroactivity question in *Booker*, its decision in *Schriro v. Summerlin*, ___ U.S. ___, 124 S. Ct. 2519, 159 L. Ed.2d 442 (2004), is all but conclusive on the point. *Summerlin* held that *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed.2d 556 (2002) -- which, like *Booker*, applied *Apprendi*'s principles to a particular subject -- is not retroactive on collateral review.
>
> *Ring* held, in reliance on *Apprendi*, that a defendant is entitled to a jury trial on all aggravating factors that may lead to the imposition of capital punishment. In *Summerlin* the Court concluded that *Ring* cannot be treated as a new substantive rule -- which is to say, a rule that "alters the range of conduct or the class of persons that the law punishes." ___ U.S. ___, 124 S. Ct. at 2523. It observed that "*Ring* altered the range of permissible methods for determining whether a defendant's conduct is punishable [in a particular way], requiring that a jury rather than a judge find the essential facts bearing on punishment. Rules that allocate decisionmaking authority in this fashion are prototypical procedural rules." *Ibid.* That is no less true of *Booker* -- or for that matter *Apprendi* itself. We held in *Curtis*

11

*v. United States*, 294 F.3d 841, 843 (7th Cir. 2002), that *Apprendi* does not apply retroactively on collateral review, because it "is concerned with the identity of the decisionmaker, and the quantum of evidence required for a sentence, rather than with what primary conduct is unlawful." That, too, is equally true of *Booker*. No conduct that was forbidden before *Booker* is permitted today; no maximum available sentence has been reduced.

The remedial portion of *Booker* drives the point home. The Court held that the federal Sentencing Guidelines remain in force as written, although 18 U.S.C. § 3553(b)(1), which makes their application mandatory, no longer governs. District judges must continue to follow their approach *as guidelines*, with appellate review to determine whether that task has been carried out reasonably. No primary conduct has been made lawful, and none of the many factors that affect sentences under the Sentencing Guidelines has been declared invalid. Consequently, *Booker*, like *Apprendi* and *Ring*, must be treated as a procedural decision for purposes of retroactivity analysis.

\* \* \* The Court held in *DeStefano v. Woods*, 392 U.S. 631, and reiterated in *Summerlin*, that the choice between judges and juries as factfinders does not make such a fundamental difference; to the contrary, the Court stated in *Summerlin*, it is not clear which is more accurate. ___ U.S. at ___, 124 S. Ct. at 2525. What is more, *Booker* does not in the end move any decision from judge to jury, or change the burden of persuasion. The remedial portion of *Booker* held that decisions about sentencing facts will continue to be made by judges, on the preponderance of the evidence, an approach that comports with the sixth amendment so long as the guideline system has some flexibility in application. As a practical matter, then, petitioners' sentences would be determined in the same way if they were sentenced today; the only change would be the degree of flexibility judges would enjoy in applying the guideline system. That is not a "watershed" change that fundamentally improves the accuracy of the criminal process. *See also Curtis*, 294 F.3d at 843-44.

We conclude, then, that *Booker* does not apply retroactively to criminal cases that became final before its release on January 12, 2005. That date, rather than June 24, 2004, on which *Blakely v. Washington*, ___ U.S.

12

\_\_, 124 S. Ct. 2531, 159 L. Ed.2d 403 (2004, came down, is the appropriate dividing line.

In <u>Green v. United States</u>, 397 F.3d 101, 103 (2d Cir. 2005), the Second Circuit held that "neither <u>Booker</u> nor <u>Blakely</u> appl[ies] retroactively to [a] collateral challenge." In <u>Varela v. United States</u>, 400 F.3d 864, 868 (11th Cir. 2005), the Eleventh Circuit held "that <u>Booker</u>'s constitutional rule falls squarely under the category of new rules of criminal procedure that do not apply retroactively to a § 2255 on collateral review." In <u>Humphress v. United States</u>, 398 F.3d 855, 863 (6th Cir. 2005), <u>pet. for cert. filed, No. 05-5130</u>, the Sixth Circuit ruled that:

> We see no basis for concluding that the judicial factfinding addressed in *Booker* is either less accurate or creates a greater risk of punishing conduct the law does not reach than did the judicial factfinding addressed in *Ring*. The Supreme Court has never held that a new rule of criminal procedure falls within *Teague*'s second exception. *Beard [v. Banks]*, 124 S. Ct. [2504], 2513-14 [(2004)]. We hold that *Booker*'s rule does not either.

In <u>United States v. Price</u>, 400 F.3d 844, 848 (10th Cir. 2005), <u>pet. for cert. filed, No. 04-10694</u>, the Tenth Circuit held that <u>Blakely</u> was a new rule of criminal procedure that was not subject to retroactive application on collateral review. In <u>Lloyd v. United States</u>, 407 F.3d 608, 615-16 (3d Cir. 2005), the Third Circuit held that "<u>Booker</u> announced a rule that is 'new' and 'procedural,' but not 'watershed;'" thus it does not apply retroactively to § 2255 motions filed in cases which were final as of January 12, 2005. In <u>Schardt v. Payne</u>, 414 F.3d 1025 (9th Cir.

2005), the Ninth Circuit held that Blakely did not announce a watershed rule of criminal procedure, and quoted approvingly from Price.

Based on McReynolds, Green, Varela, Humphress, Price, Rucker, Lloyd, and Schardt, the undersigned proposes that the presiding District Judge **FIND** that Movant's conviction was final before Blakely and Booker were decided, and that neither Blakely nor Booker applies retroactively on collateral review. Moreover, Defendant's counsel was not expected to be clairvoyant concerning the Supreme Court's rulings some 15 months later.

Thus, the undersigned further proposes that the presiding District Judge **FIND** that Defendant is entitled to no relief on his claims of ineffective assistance of counsel based upon Mr. Weis' failure to adequately object to the enhancement of Defendant's sentence.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Defendant's section 2255 motion (# 30 in Case Nos. 2:04-cv-01102 and 2:03-cr-00059; # 33 in Case No. 2:03-cr-00131).

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the

United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(e) of the Federal Rules of Criminal Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Movant, David Leon Banks, Jr., to counsel of record, and to Judge Copenhaver.

<u>  October 5, 2005  </u>                    *Mary E. Stanley*
         Date                         Mary E. Stanley
                                      United States Magistrate Judge